Argued and submitted October 3, 2011, affirmed March 7, 2012

REACH COMMUNITY DEVELOPMENT,
*Plaintiff-Respondent,*
*and*

RITZDORF COURT APTS,
*Plaintiff,*

*v.*

Thomas STANLEY,
*Defendant-Appellant.*

Multnomah County Circuit Court
090006742E; A145181

274 P3d 211

Harry D. Ainsworth argued the cause and filed the brief for appellant.

Mark McGranaghan argued the cause for respondent. With him on the brief was Bittner & Hahs, PC.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Hadlock, Judge.

BREWER, C. J.

**BREWER, C. J.**

In this residential forcible entry and detainer (FED) action, defendant appeals from a judgment of restitution of the rented premises in favor of plaintiff. Defendant asserts that, by refusing to accept rent, plaintiff waived its right to timely receive rent under the rental agreement and that plaintiff therefore was required to provide defendant with notice that it would accept rent before issuing a 72-hour notice of termination for nonpayment of rent under ORS 90.394.

Because this was an action at law tried to the court,[1] we cannot reject findings of fact if there is any evidence in the record to support them. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984). We review the trial court's legal conclusions for errors of law. Because there is evidence in the record to support the trial court's findings, we state the facts as the court found them. Plaintiff is an authorized managing agent for the owner of a residential apartment complex in Portland. Defendant was a tenant of a unit in the apartment complex under a written residential monthly rental agreement. Defendant's tenancy is subsidized, and the monthly rent, $365, was due on the first day of the month.

Plaintiff served defendant with a 10-day "for cause" termination notice before August 17, 2009.[2] Defendant then made a complaint to the Oregon Bureau of Labor and Industries (BOLI) based on the 10-day notice. On August 17, 2009, plaintiff returned a partial month's rent payment to defendant with a letter that stated, in part, that plaintiff would not "accept payments at this time for rent past the date of your 10-day Notice of Termination for Repeat Violations."

Plaintiff did not accept rent from defendant for the months of September, October, November, and December 2009. The trial court found that "[t]he parties understood that plaintiff was reserving the right to collect rent for the period of defendant's occupancy." On one or more occasions

---

[1] A residential FED action is an action at law. ORS 90.392; ORS 105.005(1).

[2] ORS 90.392(5), which is not at issue on appeal, sets out the notice requirements for a landlord's "for cause" termination of a residential rental agreement.

after August 17, 2009, defendant "walked by and asked" plaintiff's representative, Blades, a question about rent payments. The BOLI investigation was completed some time in December 2009, and both parties were aware when the BOLI investigation was completed. On or about December 7, 2009, defendant tendered a $500 money order to plaintiff. Plaintiff returned that payment to defendant on December 14. On or about December 10, plaintiff served, and then later withdrew, a 72-hour notice to defendant to pay the unpaid rent on the premises or vacate them. On December 16, plaintiff served a revised 72-hour notice on defendant demanding the payment of all rent that had accrued from August through December. Defendant did not pay the accrued rent demanded pursuant to the December 16 notice. Apart from the two 72-hour notices, after August 17, plaintiff did not provide defendant with any notice of its willingness to accept rent payments.

Defendant acknowledged before the trial court that, despite plaintiff's refusal to accept rent, plaintiff had not waived its right to receive rent payments. Instead, defendant argued that the August 17 letter waived plaintiff's right to *timely* receive rent and that plaintiff was required to provide additional notice to defendant, beyond the 72-hour notice that it served on December 16, in order to reinstate its right to *timely* receive rent payments. The trial court disagreed, concluding that the August 17 letter did not waive plaintiff's right to serve the 72-hour notice on December 16 and that the due date for rent payments remained the first of the month. Accordingly, the court entered a judgment of restitution of the premises for plaintiff.

Defendant renews his arguments on appeal. Before addressing those arguments, we note and reiterate what is not in dispute. The parties agree that, based on plaintiff's August 17 letter, "defendant would still owe rent for his occupancy but that plaintiff would not accept rent until its dispute with defendant was resolved." Moreover, defendant does not assert that the parties' dispute about the "for cause" notice of termination and the ensuing BOLI investigation had not been resolved before plaintiff issued and served the 72-hour termination notice on December 16. Thus, the primary question on appeal is a narrow one: did the August 17

letter constitute a waiver such that, once the parties' dispute about the earlier termination notice was resolved, plaintiff was not entitled to demand the payment of all *accrued* rent pursuant to a 72-hour notice under ORS 90.394?

ORS 90.394 provides, in part:

"The landlord may terminate the rental agreement for nonpayment of rent and take possession as provided in ORS 105.105 to 105.168, as follows:

"* * * * *

"(2)   For all tenancies other than week-to-week tenancies, by delivering to the tenant:

"(a)   At least 72 hours' written notice of nonpayment and the landlord's intention to terminate the rental agreement if the rent is not paid within that period. The landlord shall give this notice no sooner than on the eighth day of the rental period, including the first day the rent is due[.]

"* * * * *

"(3)   The notice described in this section must also specify the amount of rent that must be paid and the date and time by which the tenant must pay the rent to cure the nonpayment of rent."

Under the statute, "nonpayment of rent" is a basis for termination of a rental agreement. Implicit in the term "nonpayment" is the requirement that, in order to trigger a pretermination notice period, rent must be unpaid under the terms of a rental agreement. In this case, it is undisputed that defendant had not paid rent for several months when plaintiff served the December 16 notice pursuant to ORS 90.394. However, it is axiomatic that a contractual right to timely receive rent may be waived. To show that plaintiff waived its right to timely receive rent, defendant was required to prove that, by sending the August 17 letter and declining to accept rent thereafter until December 16, plaintiff intentionally and unequivocally relinquished its right to timely receive rent payments. *See McMillan v. Follansbee*, 194 Or App 145, 153, 93 P3d 809 (2004) ("A contractual waiver requires the intentional relinquishment of a known right, manifested in an unequivocal manner.").

Unlike the trial court, we conclude that the August 17 letter, and plaintiff's subsequent refusal to accept rent, constituted a waiver of plaintiff's contractual right to receive rent payments on the first of the month from September through December 2009. Frankly, we cannot conceive of any other reasonable characterization of plaintiff's intentions based on its actions. As plaintiff itself asserts, "[t]he only reasonable inference that can be drawn from the facts is that plaintiff was specifically trying to avoid a waiver of its right to terminate on the earlier [for cause] notice by not accepting payments." Plaintiff could not logically refuse to accept timely monthly rent payments while the dispute regarding plaintiff's earlier termination notice remained unresolved without intentionally forgoing its right to insist on timely monthly rental payments during that period.

The question remains whether, in addition to waiving its right to timely receive rent, plaintiff also waived its right—after the parties' dispute about the earlier notice of termination had been resolved—to insist on the payment of all accrued rent within 72 hours of issuing and serving a notice of nonpayment under ORS 90.394. According to defendant, "[i]t is well settled that a party who has waived a provision of a contract and wishes to reinstate that term, must give the other party a reasonable amount of time to cure before declaring a default." In support of that proposition, defendant relies on case law—in the context of the strict foreclosure of land sales contracts—that requires a seller to give the buyer reasonable notice of reinstatement of a contractual right to receive timely payments after the seller has previously waived that right. *See, e.g., Stinemeyer v. Wesco Farms*, 260 Or 109, 115-18, 487 P2d 65 (1971).

Like the trial court, we are not persuaded by that argument. As noted, we are bound by the trial court's findings that the parties understood that plaintiff had not waived the right to receive rent when their dispute about the previous termination notice was resolved and that they knew when that dispute had been resolved. There is no evidence that plaintiff intentionally relinquished its right to terminate the parties' rental agreement if, after the parties' dispute was resolved, defendant should fail to pay the accrued rent within

the 72-hour period prescribed by ORS 90.394. Stated differently, the legislature has prescribed a specific notice period that must precede the termination of a residential tenancy based on the nonpayment of rent, and there is no evidence that, by virtue of its preceding conduct, plaintiff intentionally relinquished its rights under that statute. It follows that the trial court did not err in concluding that plaintiff was entitled to terminate the parties' rental agreement based on defendant's nonpayment of the accrued rent and his failure to remedy that nonpayment in accordance with ORS 90.394.

Affirmed.