Submitted November 1, 2013, affirmed January 22, appellant's petition for reconsideration filed February 6 allowed by opinion May 13, 2015
See 271 Or App 139, 351 P3d 67 (2015)

Gail NEIDHART,
*Plaintiff-Respondent,*
*v.*
Adrianne PAGE,
*Defendant-Appellant,*
*and*
ALL OTHERS,
*Defendant.*

Washington County Circuit Court
C112822EV; A150255

342 P3d 1087

Frank Wall filed the brief for appellant.

Charles M. Greeff and Law Office of Charles M. Greeff, P.C., filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Schuman, Senior Judge.

LAGESEN, J.

**LAGESEN, J.**

Defendant, who rented a room in a house owned by plaintiff, appeals from a judgment in a Forcible Entry and Detainer (FED) proceeding that awarded possession of the rented premises and $2,201 in restitution for unpaid rent to plaintiff. Defendant assigns error to the trial court's denial of her motion to dismiss the proceeding and to the trial court's decision not to offset a prior judgment that defendant had obtained against plaintiff against the restitution award. We affirm.

The facts pertinent to the issues on appeal are not disputed. Defendant rented a room in a house owned by plaintiff in 2008. Defendant's monthly rent under the rental agreement was $355, with rent due "monthly in advance on the 4th day of each and every month." In 2011, conflicts developed between the parties as to their respective obligations under the rental agreement. As a result of those conflicts, defendant tendered less than the full amount of rent due under the rental agreement in February 2011; plaintiff declined to accept the tender. *See* ORS 90.417(1) (providing that "[a] landlord may refuse to accept a rent tender that is for less than the full amount of rent owed or that is untimely"). The next month, March 2011, defendant tendered a rent payment of $355; plaintiff accepted that payment. Each month thereafter, through the rental period starting in October 2011, defendant either tendered less than the amount of rent due[1] or tendered no rent at all. Plaintiff declined to accept any partial payments of rent; as a result, defendant made no rent payments after March 2011.

After defendant failed to pay the rent due on October 4, 2011, plaintiff notified defendant by letter that plaintiff would terminate defendant's tenancy for nonpayment of rent and seek possession of the premises in the manner

---

[1] In June 2011, as a result of a separate court case between plaintiff and defendant, defendant's rent was reduced. From that date forward, defendant treated the reduced amount as the amount of rent owed under the parties' rental agreement. Even taking into account that reduction in defendant's monthly rent obligation, it is undisputed that for any given month from April 2011 through October 2011, defendant did not tender the full amount of rent that she owed for that particular month.

authorized by ORS 90.394.[2] In accordance with the requirements of ORS 90.394, the letter stated that defendant owed a total of $2,201 in unpaid rent for the period extending from February 2011 through October 2011, excluding March 2011, and informed defendant that she had 72 hours in which to pay that amount in order to cure the nonpayment of rent.

Defendant did not tender the payment of any amount of rent within the 72-hour period, and plaintiff initiated this FED proceeding to obtain possession of the premises. At the FED trial, defendant moved to dismiss. Defendant argued that plaintiff had accepted a "partial payment" of the February rent within the meaning of ORS 90.417(4)[3]

---

[2] ORS 90.394 provides:

"The landlord may terminate the rental agreement for nonpayment of rent and take possession as provided in ORS 105.105 to 105.168, as follows:

"(1) When the tenancy is a week-to-week tenancy, by delivering to the tenant at least 72 hours' written notice of nonpayment and the landlord's intention to terminate the rental agreement if the rent is not paid within that period. The landlord shall give this notice no sooner than on the fifth day of the rental period, including the first day the rent is due.

"(2) For all tenancies other than week-to-week tenancies, by delivering to the tenant:

"(a) At least 72 hours' written notice of nonpayment and the landlord's intention to terminate the rental agreement if the rent is not paid within that period. The landlord shall give this notice no sooner than on the eighth day of the rental period, including the first day the rent is due; or

"(b) At least 144 hours' written notice of nonpayment and the landlord's intention to terminate the rental agreement if the rent is not paid within that period. The landlord shall give this notice no sooner than on the fifth day of the rental period, including the first day the rent is due.

"(3) The notice described in this section must also specify the amount of rent that must be paid and the date and time by which the tenant must pay the rent to cure the nonpayment of rent.

"(4) Payment by a tenant who has received a notice under this section is timely if mailed to the landlord within the period of the notice unless:

"(a) The notice is served on the tenant:

"(A) By personal delivery as provided in ORS 90.155(1)(a); or

"(B) By first class mail and attachment as provided in ORS 90.155(1)(c);

"(b) A written rental agreement and the notice expressly state that payment is to be made at a specified location that is either on the premises or at a place where the tenant has made all previous rent payments in person; and

"(c) The place so specified is available to the tenant for payment throughout the period of the notice."

[3] ORS 90.417(4) states, in relevant part, "The acceptance of a partial payment of rent waives the right of the landlord to terminate the tenant's rental agreement under ORS 90.394 for nonpayment of rent * * *."

when plaintiff accepted defendant's payment of the March rent and had, consequently, waived the right to terminate the tenancy based on defendant's nonpayment of the February rent. Defendant further asserted that dismissal was required as a result of plaintiff's alleged waiver of the right to terminate the tenancy based on the nonpayment of the February rent.

The trial court rejected that argument and ultimately found that plaintiff was entitled to the premises. The court entered judgment awarding possession of the premises and $2,201 in restitution to plaintiff. In so doing, the trial court rejected defendant's request to offset against the restitution award the amount of a money judgment that defendant had obtained against plaintiff in a separate matter. The court noted that such an offset might be appropriate if the parties stipulated to it, but otherwise concluded that the offset was not required, in light of the fact that the judgments arose from separate matters.

On appeal, defendant first renews her argument that the trial court was required to dismiss the proceeding in the light of the "invalid" notice of intent to terminate the tenancy. She again asserts that plaintiff accepted a "partial payment of rent" under ORS 90.417(4) in accepting rent for March 2011 because, at that point in time, defendant owed two months' rent and defendant paid only one month's rent. Defendant contends further that plaintiff's acceptance of that "partial payment of rent" "waiv[ed] the right of the landlord to terminate the tenant's rental agreement under ORS 90.394 for nonpayment of rent," ORS 90.417(4), and that defendant is entitled to dismissal of this case as a result. In response, plaintiff asserts that defendant's March 2011 tender was not "a partial payment of rent" within the meaning of ORS 90.417(4), and, therefore, plaintiff did not waive the right to terminate defendant's tenancy based on her failure to pay rent in February 2011.

We need not resolve the parties' dispute as to whether defendant's payment of the rent in March 2011 constituted a "partial payment of rent" within the meaning of ORS 90.417(4) and, therefore, a waiver of plaintiff's right to terminate for failure to pay the February rent. Even if

defendant's interpretation of that statute is correct, defendant has not presented a sufficiently developed argument as to why that interpretation would entitle defendant to *dismissal* under the circumstances of this case. Regardless of any waiver of the right to terminate the tenancy for nonpayment of rent in March 2011, plaintiff did not attempt to terminate the tenancy for nonpayment of rent at that time. Instead, plaintiff waited until October 2011 to terminate the tenancy for nonpayment of rent. At that point in time, defendant had not paid rent for seven months, and it is undisputed both that plaintiff did nothing to waive the right to terminate for nonpayment of rent based on defendant's nonpayment of rent from April through October, and that defendant made no effort to cure *that* nonpayment of rent within 72 hours of receiving the notice of intent to terminate the tenancy. That is, even if plaintiff gave up the right to terminate for nonpayment of rent in March 2011, it is undisputed that plaintiff did not give up the right to terminate for nonpayment of rent based on subsequent failures to pay rent. *See Reach Community Development v. Stanley*, 248 Or App 495, 500-01, 274 P3d 211 (2012) (landlord was entitled to terminate tenancy where tenant failed to pay all accrued rent within 72 hours of receiving notice under ORS 90.394).

As noted, defendant does not squarely address in her brief why she would be entitled to dismissal if she is correct that plaintiff's acceptance of the March 2011 rent effected a waiver of plaintiff's right to terminate for nonpayment of rent at that point in time. Instead, defendant's argument on the point consists of a single sentence: "A termination notice is defective if it demands too much money." But defendant has provided us with no developed argument as to why the notice in this case demanded "too much money"[4] or as to why that defect would compel dismissal

---

[4] Even if plaintiff waived the right to terminate the tenancy based on the nonpayment of February rent when she accepted the rent payment in March, by statute, defendant continued to owe plaintiff for that rent: "Notwithstanding any acceptance of a partial payment of rent under subsection (4) of this section, the tenant continues to owe the landlord the unpaid balance of the rent." ORS 90.417(6). Because defendant continued to owe that amount to plaintiff, it is not obvious that it was impermissible for plaintiff to include that amount in the notice, once defendant's subsequent defaults gave plaintiff new grounds to terminate the tenancy. We do not resolve the issue, because the parties have not sufficiently addressed it.

of this proceeding under the circumstances present here. Absent a developed argument as to why dismissal would be required if defendant's interpretation of ORS 90.417 is correct, defendant has not demonstrated that the trial court committed reversible error by denying her motion to dismiss. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) ("Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

Defendant next asserts that the trial court erred when it declined to offset the amount of the judgment that she had obtained against plaintiff in the separate case against the amount of the restitution award in this case. However, whether to offset the competing judgments was a discretionary call for the trial court, and there is nothing in this record to suggest that the trial court's decision not to offset the judgments represented an abuse of discretion. *Ketcham v. Selles*, 96 Or App 121, 124, 772 P2d 419 (1989) ("[O]ffsetting one judgment against another is not a matter of right[.]").

Affirmed.