Argued and submitted February 7, reversed May 17, 2017

EMON ENTERPRISES, LLC;
and Smiths Mobile Estates,
*Plaintiffs-Respondents,*

*v.*

Rick KILCUP, AND
ALL OTHER OCCUPANTS,
*Defendant-Appellant.*

Clackamas County Circuit Court
FE150196; A159316

395 P3d 78

Harry D. Ainsworth argued the cause and filed the brief for appellant.

Frank Wall argued the cause and filed the brief for respondents.

Before Sercombe, Presiding Judge, and DeHoog, Judge, and Flynn, Judge pro tempore.

## FLYNN, J. pro tempore

In this forcible entry and detainer (FED) action, tenant appeals a judgment of restitution of the premises to landlord. The issue presented in this appeal is whether tenant engaged in conduct that could be considered "outrageous in the extreme" so as to permit landlord to terminate the tenancy on an expedited basis under ORS 90.396(1)(f). For the reasons that follow, we agree with tenant that his conduct did not qualify as "outrageous in the extreme," within the meaning of ORS 90.396(1)(f). Accordingly, we reverse the restitution judgment.[1]

The facts pertinent to this appeal are undisputed. Tenant and his wife own a manufactured home for which they rented a space in landlord's manufactured home park. While living at the park, tenant had experienced psychotic episodes but had not sought professional help. During one such episode, tenant heard voices that told him to prepare and distribute a notice that was the basis for the eviction. The notice, which was drafted to appear that it had been issued by landlord to all of the tenants, announced a new monthly rental rate that was approximately $100 less than the current rate, announced that rent for the preceding two months would be prorated to reflect the new rate, and announced that tenant "will be managing this mobile home park," with his lot number identified as "the manager's office." After distributing the notice to several residents, tenant's auditory hallucinations abated, and he did not deliver the rest of the notices. However, he did not retrieve or correct the notices that he had already distributed.

The following day, landlord delivered a notice to all of the park's tenants emphasizing that tenant had no authority to issue the notice that he had distributed, that tenant was not the park manager, and that the monthly rent remained at the rate set by landlord—with the dollar amount specified. Landlord also served tenant with a notice

---

[1] Tenant also assigns error to the court's conclusion that service of the eviction notice on tenant was adequate to terminate the tenancy interest of tenant's wife. We do not address that assignment of error, given our conclusion that tenant's conduct was not an appropriate basis for the termination.

that his tenancy was being terminated under a law that allows termination on as little as 24 hours' notice when the tenant engages in an "act that is outrageous in the extreme." *See* ORS 90.396(1)(f). The notice identified tenant's conduct of creating and distributing the false notice as the "act that is outrageous in the extreme" and gave tenant a week to vacate the premises. Landlord then filed a complaint for eviction, which tenant opposed. The trial court concluded that tenant's conduct justified termination under the expedited-termination statute because it was "outrageous in the extreme for a landlord," and the court granted a judgment awarding landlord restitution of the premises.

On appeal, the dispute turns on whether tenant's conduct falls within the intended scope of ORS 90.396(1)(f). That statute authorizes a landlord to terminate a tenant's rental agreement and take possession "after at least 24 hours' written notice" when, among other circumstances, "[t]he tenant, someone in the tenant's control or the tenant's pet commits any act that is outrageous in the extreme on the premises or in the immediate vicinity of the premises." ORS 90.396(1)(f).[2] Termination under ORS 90.396(1) is authorized on an expedited basis compared to other statutory authority to terminate a tenancy, which generally requires "not less than 30 days" advance notice before the termination is effective. *See* ORS 90.392(3)(b) (general termination of a tenancy "for cause"); ORS 90.630(1) (termination of rental agreement for space for a manufactured dwelling or floating home for specified reasons).

As with all matters of statutory construction, our "paramount goal" is to determine the legislature's intent, and to accomplish that goal we give "primary weight" to the statute's text and context. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). Here, the text of ORS 90.396(1)(f) provides significant guidance regarding the meaning of the term "outrageous in the extreme." At the outset, the statute specifies, in part:

---

[2] The parties refer to notice under this provision as a "24 Hour Termination notice" or a "24 hours' notice of termination," but the statute specifies 24 hours as the minimum notice period, and the notice to tenant in this case provided for more than 24 hours before the termination was effective. For precision, we will refer to termination under ORS 90.396(1) as termination on an "expedited basis."

"For purposes of this paragraph, an act is outrageous in the extreme if the act is not described in paragraphs (a) to (e) of this subsection, but is similar in degree and is one that a reasonable person in that community would consider to be so offensive as to warrant termination of the tenancy within 24 hours, considering the seriousness of the act or the risk to others."

Several aspects of that sentence are significant. First whether the act is "outrageous in the extreme" is judged from the perspective of "a reasonable person," a phrase that is consistently used to describe an objective test. *See, e.g., State v. Shapiro,* 270 Or App 701, 706, 349 P3d 608 (2015) (describing standard for determining whether a building meets the definition of "not open to the public" for purposes of crime of burglary); *McDowell v. Employment Dept.,* 348 Or 605, 612, 236 P3d 722 (2010) (describing test under administrative rule defining when an employee has left work for "good cause"); *Padrick v. Lyons,* 277 Or App 455, 466, 372 P3d 528, *rev den,* 360 Or 26 (2016) (describing test for discovery of a civil cause of action). Moreover, the text makes clear that the focus of the objective test is on "a reasonable person in that community," not just what landlords as a subgroup might consider sufficient to warrant termination.

The quoted sentence also reveals that, as the term suggests, the legislature intended to set a high bar for conduct that is "outrageous in the extreme." It is conduct that "so offensive" that "a reasonable person in that community would consider" that it warrants "termination of the tenancy within 24 hours."

As guidance for applying that somewhat imprecise standard, the legislature has specified that the act must be "similar in degree" to the acts—listed in paragraphs (a) to (e) of the statute—that also justify termination in as few as 24 hours. Those paragraphs describe conduct in which someone[3] "seriously threatens to inflict substantial personal injury" or actually inflicts a "substantial personal injury," ORS 90.396(1)(a), (c); "recklessly" creates "a seriousrisk of substantial personal injury," ORS 90.396(1)(b);

---

[3] All of the paragraphs apply to "[t]he tenant or someone in the tenant's control." Some also apply to "the tenant's pet."

"intentionally inflicts any substantial damage to the premises," ORS 90.396(1)(d); or supplies "substantial false information" on the tenancy application regarding a criminal conviction that "would have been material to the landlord's acceptance of the application," ORS 90.396(1)(e). In other words, conduct that is "outrageous in the extreme" means conduct that is "similar in degree" to putting other persons at risk of "substantial personal injury," actually inflicting (not just creating a risk of) "substantial damage" to the landlord's premises, or making material fraudulent statements on the rental application (but only if the fraud relates to criminal convictions).

Landlord urges us to conclude that tenant's conduct was "similar in degree" to the other acts that permit termination on 24 hours' notice because it "interfered with Landlord's economic relations." But there is no evidence that the notice caused any economic harm to landlord. Thus, even if an act causing economic harm to the landlord could be "similar in degree" to an act that inflicts "substantial damage" to the landlord's premises, the mere risk of economic harm is not "similar in degree."

As additional guidance for identifying conduct that is "outrageous in the extreme," ORS 90.396(1)(f) offers a list of examples of acts that the legislature considered to be "outrageous in the extreme":

"Acts that are 'outrageous in the extreme' include, but are not limited to, the following acts by a person:

"(A)   Prostitution, commercial sexual solicitation or promoting prostitution, as described in ORS 167.007, 167.008 and 167.012;

"(B)   Manufacture, delivery or possession of a controlled substance, as described in ORS 475.005, but not including:

"(i)   The medical use of marijuana in compliance with ORS 475B.400 to 475B.525; or

"(ii)   Possession of prescription drugs;

"(C)   Intimidation, as described in ORS 166.155 and 166.165 [based on race, color, religion, sexual orientation, disability or national origin]; or

"(D) Burglary as described in ORS 164.215 and 164.225.[4]

Those listed examples are important context for what the legislature intended by the phrase "outrageous in the extreme." *See Schmidt v. Mt. Angel Abbey,* 347 Or 389, 403-04, 223 P3d 399 (2009) (when the legislature specifies that a particular concept "includes," or uses the phrase, "including but not limited to" a list of specific examples, "our interpretation of the general term includes consideration of those specific examples").

Landlord emphasizes that the legislature specified a "nonexclusive list" of criminal acts that are "outrageous in the extreme." Landlord argues that tenant's conduct belongs on the list because he "acted with intent to defraud landlord and other Park tenants" when he created the false notice, which makes his conduct comparable to the crime of forgery, ORS 165.007, or criminal simulation, ORS 165.037, both of which involve creating something that is fake with an intent to defraud or injure. Tenant contends that the crimes that the legislature specifically identified as "outrageous in the extreme" share the common characteristic of "degrad[ing] the quality of the community" and that crimes like forgery or criminal simulation do not share that characteristic and should not qualify as "outrageous in the extreme." We need not resolve which other crimes would qualify as "outrageous in the extreme," however, because tenant's conduct was not comparable to a crime. The trial court found that tenant intended to create and deliver the notice but that the "*mens rea* to a crime certainly wasn't" proven.

Finally, ORS 90.396(1)(f) specifies that "[a]n act that is outrageous in the extreme is more extreme or serious than an act that warrants a 30-day termination under ORS 90.392." The acts that permit termination with 30 days' notice range in severity from a "material violation" of the tenant's statutory obligation to keep the premises clean to "disturb[ing] the peaceful enjoyment of the premises by neighbors," failing to pay rent, or "deliberately or negligently"

___

[4] The quoted language in ORS 90.396(1)(f)(A) and (B) has been amended slightly since the time of Tenant's eviction, but the change has no bearing on our analysis. *See* Or Laws 2016, ch 24, § 54; Or Laws 2015, ch 98, § 3.

damaging the premises. ORS 90.325; ORS 90.392. Acts comparable to those are not "outrageous in the extreme."

Considered in the light of the substantial guidance that the legislature has provided regarding the meaning of the phrase "outrageous in the extreme," we conclude that tenant's act of distributing a false notice does not rise to the level of outrageousness for which the legislature intended to permit expedited termination under ORS 90.396. Tenant's conduct was not "similar in degree" to putting other persons at risk of "substantial personal injury" or to actually inflicting "substantial damage" to property. It did not rise to the level of criminal conduct and did not involve a misrepresentation of something as significant as a criminal history that would have affected the landlord's decision to rent the property. Rather, it is more comparable to acts like failing to pay rent, "disturb[ing] the peaceful enjoyment of the premises by neighbors," or even deliberately damaging the landlord's premises (in a way that is not "substantial"). Like those acts, tenant's acts may permit termination after 30 days' notice. But tenant's conduct was not so outrageous as to qualify under ORS 90.396 for termination on an expedited time frame.

Reversed.