## HOME FORWARD,
*Plaintiff-Appellant,*

*v.*

## Tenna GRAHAM,
Tanna Graham, and all others,
*Defendants-Respondents.*

Multnomah County Circuit Court
15LT09162; A160851

401 P3d 797

Eric S. Postma argued the cause for appellant. With him on the briefs was Bittner & Hahs, P.C.

Ann Berryhill Witte argued the cause and filed the brief for respondents.

Before DeVore, Presiding Judge, and Garrett, Judge, and Duncan, Judge pro tempore.

## GARRETT, J.

Plaintiff landlord appeals a judgment in favor of defendants, who are tenants in plaintiff's apartment building. After one of defendants physically attacked another resident, plaintiff served defendants with a notice of termination on an expedited basis under ORS 90.396 (also known as a 24-hour eviction) and commenced a forcible entry and detainer (FED) proceeding. The trial court concluded that plaintiff could not avail itself of an expedited eviction under the statute. For the reasons discussed below, we conclude that the trial court's ruling was based on a legal error, and we reverse and remand the judgment.

In an appeal from a residential FED action tried to the court, we review the trial court's legal conclusions for errors of law, and we are bound by the trial court's findings of fact if there is any evidence to support them. *Reach Community Development v. Stanley*, 248 Or App 495, 497, 274 P3d 211, *rev den*, 353 Or 127 (2012). We presume that the trial court implicitly resolved factual disputes in a manner consistent with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

Defendants Tenna and Tanna Graham, who are twin sisters, are tenants at the Tamarack Apartments.[1] On August 14, 2015, another resident, Tanner, observed Tanna combing through discarded mail in the complex's recycling bin. Tanner verbally confronted Tanna about going through other residents' mail. As Tanner walked away, Tanna came at her from behind, hitting her on the side of her face, on her arms and shoulders, and on the side of the stomach. Tanner was pregnant at the time. The attack was witnessed by another resident and by Tanner's two young daughters.

Tanna was arrested that day and charged with fourth-degree assault. Six days later, on August 20, plaintiff delivered an expedited-termination notice to defendants, informing them that their tenancy would terminate at midnight on August 25, 2015, because:

---

[1] For the sake of simplicity, we refer to defendants by their first names for the remainder of the opinion. In addition, we note that, although the events at issue concern conduct solely by Tanna, no separate issue is raised on appeal concerning the eviction of Tenna.

"The tenant, someone in the tenant's control or the tenant's pet has committed any act that is outrageous in the extreme, on the premises or in the immediate vicinity of the premises. An act that is 'outrageous in the extreme' includes, but is not limited to: prostitution; intimidation; burglary; and manufacture, delivery or possession of a controlled substance, but not including: (i) the lawful medical use of marijuana; (ii) possession of, or delivery for no consideration of, less than one ounce of marijuana; or (iii) possession of prescription drugs.

**"OCCURRENCE**

"On August 14, 2015 at approximately 1:38 pm Portland Police responded to an incident where you, Tanna, physically attacked another resident when she confronted you about your digging through her garbage. You hit her over and over causing her significant physical injury. \* \* \*"

(Boldface, uppercase, and underscoring in original.) The termination notice also asserted violations of defendants' lease agreement pertaining to criminal activity, disturbing the peace, and "other harmful behavior." Defendants did not vacate the premises on August 25.

In a residential eviction complaint filed in the trial court on August 31, plaintiff alleged that it was "entitled to possession of the property because of: 24-hour notice for personal injury, substantial damage, extremely outrageous act or unlawful occupant. ORS 90.396 or 90.403." *See* ORS 105.124 (using the same language in the statutorily prescribed form).

ORS 90.396(1) provides that, "after at least 24 hours' written notice specifying the acts and omissions constituting the cause and specifying the date and time of the termination, the landlord may terminate the rental agreement and take possession \* \* \* if:

"(a) The tenant, someone in the tenant's control or the tenant's pet seriously threatens to inflict substantial personal injury, or inflicts any substantial personal injury, upon a person on the premises other than the tenant;

"(b) The tenant or someone in the tenant's control recklessly endangers a person on the premises other than the tenant by creating a serious risk of substantial personal injury;

"*****; or

"(f) The tenant, someone in the tenant's control or the tenant's pet commits any act that is outrageous in the extreme, on the premises or in the immediate vicinity of the premises. For purposes of this paragraph, an act is outrageous in the extreme if the act is not described in paragraphs (a) to (e) of this subsection, but is similar in degree and is one that a reasonable person in that community would consider to be so offensive as to warrant termination of the tenancy within 24 hours, considering the seriousness of the act or the risk to others. An act that is outrageous in the extreme is more extreme or serious than an act that warrants a 30-day termination under ORS 90.392. ***"

As further guidance for identifying conduct that is "outrageous in the extreme," ORS 90.396(1)(f) provides a nonexclusive list of examples, including prostitution, burglary, intimidation, and unlawful manufacture, delivery, and possession of controlled substances. The landlord has the burden to prove that an expedited termination is authorized by a preponderance of the evidence. ORS 90.396(4).

At a bench trial, defendants argued that plaintiff's termination notice was defective because, although the notice closely tracked the "outrageous in the extreme" language found in ORS 90.396(1)(f), the notice described acts by Tanna that fit, if anything, under ORS 90.396(1)(a) or (b). According to defendants, plaintiff was precluded from arguing for expedited termination under paragraphs (a) or (b) because those provisions were not referenced in the notice. Plaintiff responded that a termination notice need not cite a particular paragraph of ORS 90.396 as the basis for eviction, so long as the notice provides the required specificity as to the "acts and omissions constituting the cause" and "the date and time of the termination." ORS 90.396(1). In other words, according to plaintiff, it was sufficient that the notice described the particular incident giving rise to the expedited termination, and the language referring to "outrageous" conduct was superfluous.

On the merits, the court heard testimony about the extent of Tanner's injuries and Tanna's symptoms of mental illness. Plaintiff argued that Tanna's conduct justified expedited termination under both ORS 90.396(1)(a) and (f).

The court asked plaintiff whether it was relevant that the defendants had been tenants for 14 years without incident. Plaintiff argued that it was not.

The court ruled from the bench. First, the court concluded that the notice was not defective because it "describes the acts in detail." The court then reasoned as follows:

"The real question is whether the acts that were testified to here today qualify as acts that are outrageous in the extreme within the meaning of the statute. Certainly, in the layman's sense, a physical attack on a pregnant woman with fists, even by another woman, is outrageous and potentially very harmful not only to the pregnant woman, but to her unborn child.

"Certainly those are the types of acts that law-abiding citizens are shocked and dismayed about. The Court is shocked and dismayed as well.

"The statute, though, I think determining whether an act is outrageous in the extreme within the meaning of the statute requires the Court to look at the statutory text in context, and also to look at the acts that are being complained about in context.

"The statute describes acts that are outrageous in the extreme, including but limited to, then a list of number of actions such as prostitution, manufacture, delivery, possession of controlled substances, intimidation, burglary, et cetera.

"The statute also states that an act that is outrageous in the extreme is more extreme or serious than an act that warrants a 30-day termination under ORS 90.392. That statute provides cause for termination for any material violation of the rental agreement.

"Here, the rental agreement describes in some detail acts such as disturbing the peace and criminal activity, harmful behavior toward other residents, would certainly be cause and would certainly be considered a material violation of the lease for purposes of ORS 90.392.

"That doesn't * * * automatically make those acts outrageous in the extreme within the meaning of [ORS] 90.396.

"In part because looking at the acts in question here in context, and not in a vacuum—in a vacuum, a physical

attack on a *** pregnant woman seems outrageous in the extreme. In [the] context of 14-year tenants who have—without any evidence that there have been any similar acts of this nature before, an isolated incident committed by a tenant apparently suffering from a mental health condition in a dispute with another tenant, when that other tenant *** no longer even lives on the premises, looking at those acts in context, it would seem that those acts may be cause for termination of the lease for a material violation of the lease.

"But the statute requires something that's more extreme than an act that would warrant a 30-day termination under ORS 90.392.

"The acts in question in context here, I conclude, are not more extreme than that under the particular circumstances of this case."

The court then entered judgment in favor of defendants.

On appeal, plaintiff assigns error to the trial court's ruling for several reasons. First, plaintiff argues that the trial court, having concluded that ORS 90.396(1)(f) was inapplicable, erroneously "refuse[d]" to consider either ORS 90.396(1)(a) or (b). Second, plaintiff argues that the court incorrectly reasoned that conduct constituting a violation of the lease could not also justify a 24-hour termination. Third, plaintiff argues that the court improperly considered "mitigating" factors not contemplated by the statute.

As an initial matter, we reject plaintiff's argument that the trial court "refused" to consider paragraphs (a) or (b) as bases for eviction. The trial court made no express ruling to that effect, and, throughout trial, plaintiff was permitted to make argument and put on evidence bearing on the applicability of paragraph (a). At one point, the trial court observed that, even if Tanner's injuries did not qualify as "substantial," Tanna's conduct could arguably still be considered "outrageous" due to Tanner's pregnancy. That comment indicates that the court did consider the nature and degree of Tanner's injuries. In addition, plaintiff's evidence did not compel a conclusion that Tanna's conduct "seriously threatened" or inflicted "substantial personal injury" to Tanner. *See* ORS 90.396(1)(a) ("seriously threatens to inflict

substantial personal injury, or inflicts any substantial personal injury"); ORS 90.396(1)(b) ("recklessly endangers a person * * * by creating a serious risk of substantial personal injury"). Thus, we infer that the trial court implicitly found that plaintiff had not met its burden with respect to paragraphs (a) or (b).

We now turn to whether the trial court applied an incorrect legal analysis when it considered "mitigating factors" in analyzing whether the assault was an act that is "outrageous in the extreme" under ORS 90.396(1)(f). The statute provides that, to qualify as an act that is "outrageous in the extreme," the act must be "one that a reasonable person in that community would consider to be so offensive as to warrant termination of the tenancy within 24 hours, considering the seriousness of the act or the risk to others." ORS 90.396(1)(f). Whether an act is sufficiently offensive is assessed under an objective standard from the perspective of a reasonable person in the tenant's community, and not "just what landlords as a sub-group might consider sufficient to warrant termination." *Emon Enterprises, LLC v. Kilcup*, 285 Or App 639, 642, 395 P3d 78 (2017). An act need not violate a criminal statute to qualify as "outrageous in the extreme," ORS 90.396(4), but it must either be comparable to the offenses listed under paragraph (f)—such as prostitution or burglary—or be "similar in degree" to the conduct described in paragraphs (a) through (e), such as an act that "seriously threatens to inflict substantial personal injury" on another person. *Emon Enterprises, LLC*, 285 Or App at 642-44. When assessing the relative seriousness of a tenant's conduct, a court properly looks to the tenant's mental state at the time of the act in question, along with the severity of the harm caused or risked by the conduct. *See id.* at 643-45 (holding that a tenant's act of distributing a false notice to other tenants while experiencing psychosis was not "outrageous in the extreme" in part because the tenant did not possess a culpable mental state, the landlord suffered no economic harm, and a risk of economic harm was not "similar in degree" to the other acts that justify expedited termination). In permitting expedited termination for acts that are "outrageous in the extreme," the legislature intended to set a "high bar" for conduct that would satisfy that standard. *Id.* at 642.

We agree with plaintiff that the trial court erred insofar as it relied upon the duration of defendants' tenancy and their past behavior to conclude that Tanna's actions on August 14, 2015, were not "outrageous in the extreme" within the meaning of ORS 90.396(1)(f). Although ORS 90.396(1)(f) does not expressly limit the factual circumstances that a trial court may consider, the statutory definition repeatedly directs a court to focus on the nature and consequences of the "act" at issue. As discussed above, to determine whether an act is "outrageous in the extreme," a court must compare the tenant's conduct with a set of acts and criminal offenses that the legislature has deemed so inherently harmful that engaging in those acts justifies an expedited eviction. The harm that inheres in one of those enumerated acts is not altered by the length of a person's tenancy or the fact that the act was an isolated occurrence, and the statute does not contemplate that those circumstances are relevant in comparing a tenant's conduct to one of the listed acts. Accordingly, the trial court erred insofar as it considered factors that are irrelevant to the "seriousness" or "risk" associated with the act itself.

Finally, we agree with plaintiff that the trial court erred to the extent that it concluded that Tanna's conduct could not qualify as "outrageous in the extreme" because it also constituted a "material violation" of defendants' rental agreement with plaintiff. As recited above, the trial court reasoned that, for an act to qualify as "outrageous in the extreme" under ORS 90.396(1)(f), the conduct in question must be "more extreme than an act that would warrant a 30-day termination under ORS 90.392." *See* ORS 90.396(1)(f) ("An act that is outrageous in the extreme is more extreme or serious than an act that warrants a 30-day termination under ORS 90.392."); ORS 90.392(2) (providing that cause for a 30-day termination includes a "[m]aterial violation by the tenant of the rental agreement" and a material violation of ORS 90.325). Read together, the statutory provisions cited by the trial court establish that, when conduct materially violates the rental agreement and provides cause for a 30-day termination, that conduct does not necessarily warrant an expedited termination. It does not logically follow, however, that *if* conduct violates the lease and would justify

a 30-day termination, then that conduct *cannot* justify an expedited termination.

Rather, the proper inquiry for determining whether an act is "more extreme or serious than an act that warrants a 30-day termination under ORS 90.392" is whether the act was "more extreme or serious" than the violations enumerated in ORS 90.325 and ORS 90.392, including, for example, nonpayment of certain charges. *See Emon Enterprises, LLC*, 285 Or App at 644-45 (evaluating the tenant's act with reference to the seriousness of the acts expressly enumerated in ORS 90.325 and ORS 90.392). It would be unreasonable to conclude that the legislature intended the "outrageous in the extreme" inquiry to turn on the contents of the individual rental agreement, which will inevitably vary between tenancies. Such a conclusion would penalize a fastidious landlord for providing a tenant with greater clarity as to prohibited conduct, a result that the legislature would not have intended. *See State v. Cervantes*, 232 Or App 567, 587, 223 P3d 425 (2009) ("We assume that the legislature did not intend an unreasonable result.").

Because, for the foregoing reasons, we conclude that the trial court misinterpreted the statute, we remand for the court to determine whether, under the correct legal standard, plaintiff met its burden to prove that the conduct at issue was "outrageous in the extreme" within the meaning of ORS 90.396(1)(f). *See Williams v. Salem Women's Clinic*, 245 Or App 476, 483, 263 P3d 1072 (2011) ("When a trial court has applied an incorrect legal standard in assessing a party's claim, we sometimes remand so the trial court may apply the correct standard in the first instance.").

Reversed and remanded.